In re James J. CREA and Kathleen P. Crea, d/b/a All State Insulation, Rice Street Cafe and Capital Cafe, Debtors,

MacARTHUR COMPANY, Plaintiff,

v.

James P. CREA, d/b/a All States Insulation, Defendant.

Bankruptcy No. 3–81–1604.
Adv. No. 3–81–0403.

United States Bankruptcy Court,
D. Minnesota.

June 2, 1983.

Harry T. Neimeyer, Stringer, Courtney & Rohleder, Ltd., St. Paul, Minn., for plaintiff.

Patrick Gallagher, St. Paul, Minn., for defendant.

## MEMORANDUM ORDER AND JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for trial March 22 and 23, 1983 on the Complaint of MacArthur Company seeking judgment, pursuant to 11 U.S.C. § 523(a)(4), that a debt owed MacArthur by the defendant is nondischargeable.

Harry T. Neimeyer appeared on behalf of the plaintiff, MacArthur Company ("MacArthur").

Patrick J. Gallagher appeared on behalf of defendant, James J. Crea, d/b/a All State Insulation ("Crea").

After the plaintiff completed presentation of its evidence, the defendant moved pursuant to Bankruptcy Rule 741 for a dismissal on the ground that upon the facts and the law, the plaintiff had shown no right to relief. The motion was granted and judgment entered against the plaintiff. The following findings are made pursuant to Rule 52(a) of the Federal Rules of Civil Procedure as required by Bankruptcy Rule 741.

## FINDINGS OF FACT

The defendant, James J. Crea, has been employed in the pipe covering business since 1965. In March of 1978 he began subcontracting pipecovering work under the name of All State Insulation. Crea operated All State Insulation as a sole proprietorship until filing his bankruptcy petition on August 21, 1981.

Between March 1978 and May 1980, the plaintiff, MacArthur Company, was Crea's primary material supplier. Approximately 95% of the materials used on jobs contracted by Crea were purchased from or through MacArthur.

Crea purchased materials from MacArthur on an open account basis. When Crea placed an order with MacArthur, it was filled and charged against his account. MacArthur billed its accounts monthly. Each monthly statement reflected the current balance due on account as well as any amount more than 30, 60 or 90 days past due. Finance charges were levied against amounts past due.

When Crea purchased materials from MacArthur, he generally received them "FOB", which means he picked them up directly from MacArthur's loading dock. For these purchases, MacArthur had no means of identifying on which of Crea's jobs the materials were used. MacArthur can only identify with certainty where particular materials were used on orders which Crea instructed MacArthur to deliver the materials to a job site. In instances where delivery instructions were given, MacArthur's invoices reflect the address of the job site.

When MacArthur received payment on an account, they made no attempt to segregate accounts by job. Even where MacArthur knew the source of a payment, it did not credit it against the charges for materials used on that job; rather MacArthur charged payments received against the oldest accounts first.

MacArthur had no written policy regarding the terms for extending credit. The terms for a particular account were established on a case by case basis by MacArthur's credit manager. Generally a customer could charge on an open account basis as long as their past due balance remained in the 30 to 60 days past due range. When, in MacArthur's opinion, an account became excessively overdue, credit privileges would be suspended until satisfactory arrangements for payment were made.

On several occasions, Crea's credit privileges with MacArthur were suspended for being excessively delinquent. In all but the last of these instances, Crea negotiated the re-establishment of his credit with MacArthur's credit manager.

The last suspensions occurred on or about April 22, 1980. At that time, Crea's account had an outstanding balance of more than $58,000.00. To re-establish his credit with MacArthur, Crea gave MacArthur a check from the Hickey Co. in the amount of $26,482.31. Crea received this check as payment for work done on the new Apple Valley Middle School. MacArthur's credit manager was aware of the source of this check and could identify the materials used on that job. In accordance with normal procedure, however, the payment was credited against the oldest accounts first. Some of the older accounts were for materials other than those used on the Hickey job. Because they were paid for with funds from the Hickey job, some of the charges for materials used on the Hickey job went unpaid. MacArthur eventually provided lien waivers for these materials because they only remained outstanding due to MacArthur's accounting procedure.

At the time Crea's credit with MacArthur was terminated, MacArthur claimed an outstanding balance of $32,216.64 was due on Crea's account. On July 25, 1980, MacArthur obtained a default judgment against Crea in Ramsey County District Court for $31,924.72. MacArthur now seeks to have this court determine that debt to be excepted from discharge.

## MEMORANDUM

### I

The plaintiff's complaint in this case alleges that pursuant to Minn.Stat. § 514.-

02, the defendant, Crea, was guilty of theft. Minn.Stat. § 514.02 subd. 1 states:

> Whoever, on any improvement to real estate within the meaning of section 514.-01, fails to use the proceeds of any payment made to him on account of such improvement by the owner of such real estate or person having any improvement made, for the payment for labor, skill, material, and machinery contributed to such improvement, knowing that the cost of any such labor performed, or skill, material, or machinery furnished for such improvement remains unpaid, and who has not furnished to the person making such payment either a valid lien waiver as to any unpaid labor performed, or skill, material, or machinery furnished for such improvement; or a payment bond in the basic amount of the contract price for such improvement, conditioned for the prompt payment to any person or persons entitled thereto for the performance of labor or the furnishing of skill, material, or machinery for the improvement, shall be guilty of theft of the proceeds of such payment and upon conviction shall be fined not more than $1,000 or imprisoned not more than one year, or both.

MacArthur further reasons that the debt is made nondischargeable by 11 U.S.C. § 523(a)(4). § 523(a)(4), in pertinent parts, states:

> (a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

Therefore, MacArthur asserts that because the debt owed by Crea is due to theft, a popular term for larceny, they are entitled to a judgment declaring the debt is not discharged.

At the close of its case, MacArthur moved to amend its complaint to include the additional grounds for nondischargeability, "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The motion was granted.

In asserting these additional grounds, MacArthur relied on the Minnesota Supreme Court's construction of Minn.Stat. § 514.02 in *State v. Reps,* 302 Minn. 38, 223 N.W.2d 780 (1974). In *Reps* the court held that a contractor, unless he provides a lien waiver or payment bond, accepts payment for improvements in a fiduciary capacity and this imposes a trust character on the payments. Thus a knowing diversion of the funds would constitute a violation of the trust and a breach of a fiduciary duty. *Id.* at 786. According to MacArthur's amended complaint, because Crea received payment for improvements, without providing a lien waiver or payment bond, and did not pay his supplier, the remaining debt is nondischargeable because it resulted from a breach of the fiduciary duty Crea owed to MacArthur.

## II

At trial, MacArthur went to great lengths to demonstrate that materials were purchased by the defendant, used to improve real estate and that Crea knew that MacArthur had not been completely paid for these supplies.

After the plaintiff completed the presentation of its evidence, there is no doubt Crea purchased materials from MacArthur and that he has not paid for some of them. It is not clear, however, that Crea received payments for the improvements on which the materials were used and diverted the proceed to uses other than payment of labor or materials used to make the improvements. At the very least, to carry its burden under Minn.Stat. § 514.02, the plaintiff must demonstrate, by more than circumstantial evidence, that the defendant was paid for his work.

If MacArthur had offered evidence that Crea had been paid, the burden would have shifted to Crea. Section 514.02 provides two defenses to liability. A defendant is not guilty of theft where he demonstrates all the proceeds from a project were used to pay for labor or materials used on that job or that he has posted a bond for payment.

It also appears that a cause of action will not lie where valid lien waivers have been given to the consumer by the materialman. Minn.Stat. § 514.02.

Bankruptcy Rule 741 makes Rule 41 of the Federal Rules of Civil Procedure applicable in adversary proceedings. Section (b) of Rule 41 states,

> [A]fter the plaintiff, in an action tried by the Court without a jury, has completed the presentation of his evidence, the defendant, . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The Court as trier of fact, may then determine them and render judgment against the plaintiff . . .

In this case where the plaintiff has failed to meet its burden of proof, relief as a matter of law could not be granted, therefore, pursuant to Rule 741 judgment will be entered for the defendant.

### III

Establishing a violation of § 514.02 alone would not be sufficient to find the debt nondischargeable. Dischargeability is a matter to be determined by federal law. Violation of a state statute is only persuasive where the state and federal standards are the same. Beyond the question of whether there is more than a semantical difference between theft and larceny, the standards in Minn.Stat. § 514.02 and 11 U.S.C. § 523 are clearly different.

The intent requirement found in the federal standard was specifically removed from § 514.02. In addition, the fiduciary capacity the Minnesota Supreme Court has found implied in § 514.02 imposes a constructive trust to which § 523(a)(4) exception to discharge does not apply. I also think it is important that Minn.Stat. § 514.02 is not primarily a remedy for a subcontractor, rather it is intended to regulate conduct to avoid the harsh consequences of the mechanics lien statutes on innocent land owners. I do not believe the legislature intended nor do I think it would be appropriate, to allow a material supplier to use § 514.02 to create a claim of dischargeability, in a contractors subsequent bankruptcy, to which he would not otherwise be entitled as a matter of bankruptcy law.

### A

The discharge provisions of § 523 of the Bankruptcy Code are substantially similar to those in § 17 of the Bankruptcy Act. Therefore, examining the history and construction of § 17 is instructive in interpreting § 523. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 1 C.B.C.2d 34, n. 1. (1979); 3 Colliers § 523.03 (15th ed. 1982).

Prior to the 1970 amendments to the Bankruptcy Act the question of dischargeability of individual debts was within state court jurisdiction.[1] However, because creditors used this as a means to undermine the discharge of debtors and in an attempt to promote a uniformity of application, Congress amended the Bankruptcy Act to give Bankruptcy Courts exclusive jurisdiction over the question of dischargeability of certain debts. *In re Huff,* 1 B.R. 354, 1 C.B. C.2d 171, 172 (Bkrtcy.Utah 1979);[2] These amendments were subsequently interpreted by the United States Supreme Court as creating a new federal right of action not based on nor identical to any state cause of action. The amendments were viewed as a means of insuring exclusive federal control over the federally created right of discharge in bankruptcy. *Brown v. Felsen,*

1. See Pub.L. No. 91–467, Sec. 6 (Dec. 18, 1970). Prior to 1970 the debtor had to assert discharge as defense to a state court proceeding where a creditor was attempting to collect on the debt. 3 Colliers § 523.05 (15th Ed.1982). The 1970 amendments to the Bankruptcy Act added a new subdivision, subdivision c, to § 17. It provided that debts excepted from discharge by § 17a(2), (4), (8) were discharged unless a creditor, who contended his debt was nondisc-

harged pursuant to one of the causes of § 17a, timely filed an application for determination of dischargeability. The code did not substantially change these provisions.

2. See S.Rep. No. 91–1173, 91st Cong., 2d Sess. (Sept. 16, 1970); House Judiciary Comm., H.R. Doc. No. 91–1502, *reprinted in* (1970) U.S.Code Cong. and Ad.News 4156.

442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).[3]

Subsequent cases reasoned from *Brown* that the grant of exclusive jurisdiction over matters of dischargeability found in the 1970 amendments coupled with the interest in uniformity which prompted their passage and in light of their failure to make any reference to state law, justifies a finding that federal law governs both substance and procedure[4] of § 17 cases was justified. *See In re Arden,* 2 B.C.D. 204 (D.R.I.1975); *In re Baxter,* No. 74–811 (E.D.Pa.1975). *In re Barlick,* 1 B.C.D. 412 (D.R.I.1974); *In re Campbell,* No. 56018 (S.D.Ohio 1972), *aff'd on appeal* (S.D.Ohio Feb. 12, 1973). In *Campbell* the court concluded:

> Since the passage of the Dischargeability Act, we are no longer sitting as a state court interpreting state law … Rather, we sit today as a federal court interpreting a federal statute which provides the exclusive remedy for a creditor …

*Id.* at 6.

After deciding that bankruptcy dischargeability is a matter of federal law, the next step is determining what the federal standard is. Because there are no specific rules which establish the standard, the Supreme Court in *Local Loan Co. v. Hunt* held a standard must be construed from the purpose and policies underlying the Act. 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

In the Supreme Court's view, one of the basic purposes of bankruptcy is to,

> [R]elieve the *honest* debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes … The various provisions of the bankruptcy act were adopted in the light of that view and are to be construed when reasonably possible in harmony it so as to effect the general purpose and policy of the act.

*Id.* at 244, 54 S.Ct. at 699 (citations omitted) (emphasis added).

The court further said that to facilitate the "fresh start policy", exceptions to discharge are strictly construed in favor of the bankrupt. *See Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). When this rule of construction and the purpose of helping the "honest debtor" are read together, it is clear that § 17 and thus § 523 should be applied to prevent only the discharge of the dishonest debtor who possessed an *intent* to deceive his creditor. *In re Huff,* 1 B.R. 354, 1 C.B.C. 171 (Bkrtcy. Utah 1979).

Herein lies the problem with the plaintiff's argument in this case. Although Minn.Stat. § 514.02 is a criminal provision, the violation of which constitutes theft, the crime is committed without intent. The legislative history of Minn.Stat. § 514.02 indicates that the scienter requirement was

---

**3.** In *Brown,* the Supreme Court stated: "By express terms of the Constitution, bankruptcy law is federal law; U.S. Const., Art. I, § 8; cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S.Rep. No. 91–1173, p. 2 (1970) *Brown v. Felsen,* 442 U.S. 127, 136, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979).

**4.** *Erie v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) makes it clear that the grant of jurisdiction does not automatically carry with it a mandate to develop a new body of law. However, courts have reasoned that developing a federal common law with regard to dischargeability is not inconsistent with the *Erie* doctrine.

First, the *Erie* doctrine, that any issue of substantive law other than a federal question must be determined with reference to the laws of the state where the Federal Court is situated, was promulgated to eliminate forum shopping. In a bankruptcy case where the Bankruptcy Court has original and exclusive jurisdiction to determine discharge, no party can attempt to effect the outcome of a case by choosing to sue in a Federal rather than State court.

Second, it is not reasonable to conclude Congress intended the small body of state law on dischargeability issues, especially with regard to false financial statements, to be binding on the Bankruptcy Court. Such a conclusion would be in direct conflict with the purpose of granting exclusive jurisdiction. Congress clearly intended the 1970 amendments to end long standing abuse and injustice, and to develop a uniform body of law in the area of dischargeability. *See supra,* note 2, *In re Barlick,* 1 B.C.D. 412 (D.R.I.1974). *See also, In re Huff,* 1 B.R. 354, 1 C.B.C. 171, 172 (Bkrtcy.Utah 1979).

specifically deleted in 1971. *See* Laws 1971, c. 914, § 1, eff. June 8, 1971. I think hold-ing a debt nondischargeable on the basis of a state law such as § 514.02 alone, absent any evidence that the defendant intended to defraud the creditor as required by § 523, contravenes the federal nature of bankruptcy and the bankruptcy courts ex-clusive jurisdiction over discharge. Such a holding would return this court to the posi-tion of a federal court interpreting state law. It would allow individual states to dictate the terms of dischargeability. If this were the case, the granting of dis-charge would be far from the uniform. These are the problems the 1970 amend-ments were designed to eliminate.

A creditors ability to have a debt declared nondischargeable is not hampered by this holding. Even where a creditor has obtain-ed a judgment against a debtor in state court without raising the fraud issue, he may subsequently seek to have the debt declared nondischargeable in bankruptcy court. In such cases raising the fraud issue is not barred by res judicata. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

B

The plaintiff's argument that the debt should be nondischargeable because the de-fendant breached a fiduciary duty has a flaw similar to that discussed above. The meaning of "fiduciary" in § 523 is an issue of federal law. State law is recognized only to the extent it applies similar defini-tion of trust and fiduciary duty.

The scope of the concept of fiduciary in § 17a(4) and thus § 523(a)(2) has been con-sistently limited to technical trusts, not those implied in law. *Davis v. Aetna Ac-ceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79

L.Ed. 393 (1934); *Tindle v. Birkett,* 205 U.S. 183, 27 S.Ct. 493, 51 L.Ed. 762 (1907); *Crawford v. Burke,* 195 U.S. 176 (1904); *Upshur v. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Noble v. Ham-mond,* 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621 (1889); *Hennequin v. Clews,* 111 U.S. 676, 4 S.Ct. 576, 28 L.Ed. 565 (1844); *Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1877); *Chapman v. Forsyth,* 2 How. 202, 208, 11 L.Ed. 236 (1844); *In re Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980); *In re Pedrazzini,* 644 F.2d 756, 758 (9th Cir.1981).

The core requirements are that the rela-tionship exhibits the characteristics of a traditional trust and that the fiduciary duties be created prior to the act of wrong doing, not as a result of the act. *Schlecht v. Thorton, (In re Thorton),* 544 F.2d 1005, 1007 (9th Cir.1976). This standard specifi-cally excludes constructive trusts.[5]

Other courts have dealt with statutes, similar to Minn.Stat. § 514.02, which im-pose criminal or other penalties for diver-sion of funds. The majority[6] have refused to find a trust or fiduciary relationship. These courts have reasoned that even if the statute creates a trust, the trust arises only upon the act of misappropriation and does not exist prior to the wrong doing nor with-out reference to it. *In re Angelle,* 610 F.2d at 1340; *In re Thornton,* 544 F.2d at 1007; *In re Pedrazzini,* 644 F.2d at 759. *See also, Devaney v. Dloogoff, (In re Dloogoff),* 600 F.2d 166 (8th Cir.1979).

I agree with Judge Connelly in his recent decisions in *In re Burt, unreported decision,* Bky. No. 3–82–0151 (April 8, 1983) and *In re Rackow, unreported decision,* Bky. No. 3–82–0198 (April 8, 1983). Citing *Pedrazzi-ni,* Judge Connelly held that Minn.Stat. § 514.02 fails to create the basic elements

---

**5.** There is language in the *Thorton* case which might indicate that the "fiduciary capacity" in § 17a(4) thus § 523(a)(2) may extend beyond a consensual trust, to a trust created by statute. However, the means by which the fiduciary capacity is created is of far less importance than whether true fiduciary responsibilities are imposed.

**6.** *In re Romero,* 535 F.2d 618 (10th Cir.1976), reflects an apparent minority view. The New Mexico statute provides for the revocation of the contractors license if funds paid by the land owner were diverted. The Court in *Romero* reasoned that because the contractor had to be licensed prior to any dealings among the par-ties, the trust was created prior to the claim of misappropriation. 535 F.2d at 622. *See also, In re Pedrazzini,* 644 F.2d 756, 759.

of a trust. No res is defined and no fiduciary duties are spelled out. Therefore, the statute does not create a true fiduciary relationship within the owner-contractor-subcontractor context on which a claim of nondischargeability may be based.

### C

Finally, in considering whether or not Minn.Stat. § 514.02 provided a basis for a supplier's claim that a debt be held nondischargeable, I became concerned that the proposed use of this statute was not that intended by the legislature. § 514.02 is in the mechanics lien section the Minnesota statutes, however, it appears to me that it was actually designed to protect the consumers of labor and materials rather than their suppliers. Minn.Stat. § 514.01 gives a supplier who furnishes materials a lien upon the improvements made with them and upon the land on which they are situated. Where a contractor fails to pay a supplier, the consumer may be compelled to pay for the improvements twice if the supplier forecloses his lien. Minn.Stat. § 514.02 is designed to deter subcontractors from forcing this unjust result on consumers. It seems inappropriate to allow a material supplier who, but for § 514.02, would have to prove independent grounds for dischargeability, to use it alone to support a claim of nondischargeability of a debt in bankruptcy. A suppliers statutory remedy is to file a mechanics lien.

I think this is particularly true in a case such as this, where the contractor and supplier transacted business on an open account basis. When the contractor pays the supplier, the manner in which those payments were credited are within the complete control and discretion of the supplier. It is inequitable to find the contractor guilty of theft where the conduct for which he is held liable is completely beyond his control. At very least, if suppliers are going to be allowed to use § 514.02 as proposed, they will have to be more cautious in identifying materials purchased with the corresponding payments from proceeds.

Ordinarily the supplier could rely on its mechanics lien rights and attempt to collect the unpaid accounts from the consumers of the materials. In this case, because MacArthur knowingly credited some invoices with proceeds from other jobs, they were forced to give lien waivers for the outstanding invoices for materials used on the job which generated the proceeds. MacArthur is now left in the unhappy position of having only the insolvent contractor to look to for the outstanding balance. I do not believe Minn. Stat. § 514.02 was intended to make up for suppliers accounting errors, and does not provide a sufficient grounds on which to base a claim of nondischargeability.

### CONCLUSION

Based on the foregoing and pursuant to Bankruptcy Rule 741,

IT IS ORDERED:

1. This case is dismissed.
2. Judgment is entered against the plaintiff in favor of defendant.