SCHNEIDER FUEL & SUPPLY COMPANY, Respondent, v.
WEST ALLIS STATE BANK, Appellant.*

*Nos. 582, 583 (1974). Argued December 2, 1975.—
Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 266.)

* Motion for rehearing denied, with costs, on June 30, 1976.

1042

1044

For the appellant there were briefs by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Ward Dunphy*.

For the respondent there was a brief by *Lichtsinn, Dede, Haensel & von Bereghy, S. C.* and *Godfrey & Trump*, attorneys, and *Hugh R. Braun* of counsel, all of Milwaukee, and oral argument by *Mr. Braun*.

Briefs amicus curiae were filed by *Bruce Gillman* and *Tomlinson, Gillman & Travers, S. C.* of Madison on behalf of The Surety Association of America, and by *Boardman, Suhr, Curry & Field* of Madison on behalf of the Wisconsin Bankers Association.

ROBERT W. HANSEN, J. The defendant-appellant bank raises five issues in its brief on appeal, and with these five issues this opinion will separately deal.

1. *Whether plaintiff was a "claimant"* under sec. 289.16, Stats. 1967, which states:

"289.16 **Theft by contractors.** All moneys, bonds or warrants paid or to become due, to any prime contractor or subcontractor for public improvements are a trust fund in his hands; and the use of the moneys by him for any purpose other than the payment of claims on such public improvement, before the claims have been satisfied, constitutes theft and is punishable under s. 943.20."

Defendant bank contends that under this section a constructive trust is not created until there is a claim by a material supplier to the proceeds. It is argued that the nature of the business relationship between plaintiff and Underground negatived any knowledge on the part of Underground or the defendant bank that plaintiff was demanding any payment of contract proceeds for materials furnished. The contention is that, because plaintiff

did not make immediate demands for payment on materials on each specific contract, the plaintiff had not made any claims.

There are several things wrong with this argument. It is raised for the first time on appeal, and the practice of this court is not to consider an issue raised for the first time on appeal.[1] If this policy rule were not here followed, we would hold that the plain language of the statute makes no such distinction between "claimant" and "creditor." Where a similar statute was involved,[2] our court held, where materials had been supplied under an open account and without designation to specific jobs, that the ". . . plaintiff has supplied 'materials used for such improvements' and the statute requires no more."[3] On the merits, we would apply the reasoning of this *Weather-Tite Case* to the situation before us. Under the rule barring consideration of issues raised for the first time on appeal, the issue raised is rejected. If exception were here made, the interpretation of the statute that is suggested by defendant bank would be held to be an incorrect construction of the statute.[4]

2. *Whether the defendant bank was a "trustee"* under sec. 289.16, Stats. 1967. The trial court held that the

---

[1] *Terpstra v. Soiltest, Inc.* (1974), 63 Wis. 2d 585, 593, 218 N. W. 2d 129.

[2] Sec. 289.02 (4), Stats. 1963, providing that: "The proceeds of any mortgage on land, paid to any principal contractor or any subcontractor for improvements upon the mortgaged premises and all moneys paid to him by any owner for improvements, constitute a trust fund in the hands of any such contractor or subcontractor to the amount of all claims due and to become due or owing from such contractor or subcontractor for labor and materials used for such improvements until all such claims have been paid; . . ."

[3] *Weather-Tite Co. v. Lepper* (1964), 25 Wis. 2d 70, 74, 130 N. W. 2d 198, this court also holding: "The statute makes no other requirement than that the materials be 'used for such improvements;' it leaves no room for judicial construction."

[4] Sec. 289.16, Stats. 1967 (set forth above).

defendant bank ". . . by accepting assignment of receivables, together with the security agreement of September 3, and by accepting payment of the municipal checks, became a trustee under sec. 289.16, Stats. (1967)." The bank contends that this statute applies a constructive trust to the funds only when and while they are in the hands of the contractor. As to the status and duties of the bank, the contention is that they are determined by the Uniform Fiduciaries Act,[5] and under such act the bank here is not liable. Sec. 112.01 (10), Stats. 1967, does provide for liability of a drawee bank where the funds involved are held in trust.[6] But, in other sections of the act, different responsibilities are provided where drawees, rather than payees, are involved.[7] It must be kept in mind that, in the case before us, the defendant bank had a dual role, serving as both the drawee and payee of the checks drawn by Underground to pay the loan notes. This situation arises because Underground deposited the money received into its ac-

[5] Sec. 112.01, *et seq.*, Stats. 1967.

[6] Sec. 112.01 (10), Stats. 1967, which provides: "(10) DEPOSIT IN FIDUCIARY'S PERSONAL ACCOUNT. If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith."

[7] *See:* Sec. 112.01 (8), Stats. 1967.

count and then wrote a check to the bank from that account. The question before us is what are the bank's duties and responsibilities in each role.

The distinction between responsibilities as drawee and as payee is made clear in the Annotations to the Uniform Fiduciaries Act,[8] from which the Wisconsin enactment is taken and on which it is patterned. When a fiduciary makes withdrawals by check, the depository bank is not bound to inquire for what purpose the withdrawals are made.[9] But when the check is payable to the depository bank and delivered in payment of or as security for a debt of the fiduciary, the bank is put upon inquiry.[10] Thus, where the fiduciary makes a deposit in his personal account and subsequently pays a personal debt to the bank by a check on that account, the bank must ascertain what is done with the funds withdrawn.[11] The cited portions of the Commissioners' Note to the Uniform Fiduciaries Act correctly state the law in our opinion.

For its contention that sec. 112.01 (10), Stats. 1967, applies and that the bank here cannot be held liable in the absence of "actual knowledge" of a breach or "bad faith," the defendant bank relies upon two Wisconsin cases, the *Murphy Case*[12] and the *London & Lancashire Case*.[13] In *Murphy*, the plaintiff was a subcontractor who was owed money by a general contractor. The bank was impleaded, and it was established that, during the job, the general contractor had executed to the bank an assignment of the paving contract. Our court held that, when the general contractor received the funds, it was acting

---

[8] 7 Uniform Laws Annot., "Uniform Fiduciaries Act" (1970), sec. 9, Commissioners' Note, pages 414, 415.

[9] *Id.* at page 414.

[10] *Id.* at page 414.

[11] *Id.* at pages 414, 415.

[12] *Murphy v. National Paving Co.* (1938), 229 Wis. 100, 281 N. W. 705.

[13] *London & Lancashire Indemnity Co. v. American State Bank* (1943), 244 Wis. 203, 12 N. W. 2d 133.

as bailee for the bank, and the bank was not relieved from liability.[14] We see that decision as limited to the special circumstances of that case, and not reaching the situation now before us. The second case, *London & Lancashire,* involved money received by a contractor being deposited in the contractor's account, with checks drawn from that account to the bank to pay for the loan owed the bank by the contractor. At the demurrer stage, this court held that the funds involved were clearly trust funds, stating that liability of the bank depended upon its having actual knowledge that the fiduciary was committing a breach of his obligations.[15] While suggesting that allegations in the complaint as to actual knowledge were "matters of mixed law and fact,"[16] the court concluded that they were "conclusions of law which are not admitted on demurrer."[17] We view that holding as establishing only that, if sec. 112.01 (10) does apply, as the complaint there appears to have conceded, there still exist "matters of mixed law and fact" to be decided at time of trial. While neither *Murphy* nor *London & Lancashire* deal with the exact situation or issue presented in the case before us, we reject any implication in either that, in the situation now before us, sec. 112.01 (10) frees the bank from liability in the absence of actual knowledge of a breach or bad faith.

Instead, we affirm the trial court holding that the defendant bank, under the facts here, became a trustee under sec. 289.16, Stats. 1967, thus rejecting the defendant bank's contention that such statute applies a constructive trust to funds only while they remain in the hands of the contractor. We affirm the trial court find-

---

[14] *Murphy v. National Paving Co., supra,* footnote 12, at pages 113, 114.

[15] *London & Lancashire Indemnity Co. v. American State Bank, supra,* footnote 13, at page 208.

[16] *Id.* at page 208.

[17] *Id.* at page 208.

ing of fact that the defendant bank "knew that the proceeds of these checks originated from public improvement contracts," such holding found not to be against the great weight and clear preponderance of the evidence, which is the test on review.[18] Given such fact of notice, given the status of the bank as payee as well as drawee, given the responsibilities deriving from the constructive trust established by sec. 289.16, we agree with the trial court holding that the defendant bank here was liable, under these facts and circumstances, as a trustee under sec. 289.16.

3. *Whether the defendant bank was a "holder in due course."* The trial court held that: "The bank was not a holder in due course." The statute as to holders in due course provides:

"403.302 **Holder in due course.** (1) A holder in due course is a holder who takes the instrument:
"(a) For value; and
"(b) In good faith; and
"(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The first requirement of this statute is that a person claiming the protection of the statute must qualify as a "holder," defined in sec. 401.201 (20), Stats., to mean a person who is ". . . in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." We deal here with checks paid from Underground's account and canceled or stamped "Paid" by the bank. There is nothing in this record to negative the usual banking practice of returning canceled checks to the person on whose account they were drawn. No attempt was made at the trial to suggest or establish that

---

[18] *See: Stevens Construction Corp. v. Carolina Corp.* (1974), 63 Wis. 2d 342, 359, 217 N. W. 2d 291.

the defendant bank was "in possession" of such canceled checks. Also, under sec. 403.603 (1), such "Paid" or canceled checks are considered ". . . discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument . . . ." We find it difficult to hold that the defendant bank here was established to be "in possession" of the canceled checks so as to qualify as a "holder."

Both parties concentrate, as to this issue raised, on the "notice" requirements of the "holder in due course" statute, particularly as it relates to "claim to it on the part of any person." It is true that at the time it received the funds involved, the defendant bank was not aware of the plaintiff's claim as a supplier of materials for the public improvement work. However, we have upheld that trial court finding that the bank knew the source of the funds it was receiving from Underground. As stated in the *Murphy Case*, ". . . it [the bank] was chargeable with knowledge of the statute and its legal effect."[19] Thus the bank is chargeable with knowledge that the funds in its possession were subject to a statutory trust. That it did not know of claims made or makable by parties providing labor or materials for the jobs involved in public improvement work does not alter the consequences of its knowledge of its responsibilities as trustee under sec. 289.16, Stats. 1967. In the *Murphy Case*, the bank there was not aware of Murphy's claim but was nevertheless held liable as trustee for Murphy's unpaid materials bill.[20] There, as here, the defendant bank had the obligation to inquire regarding claims of unpaid suppliers and, knowing the source of the funds and their being impressed with a trust, was obligated to hold them

---

[19] *Murphy v. National Paving Co., supra,* footnote 12, at page 106.

[20] *Id.* at page 114.

for the benefit of unpaid workers or material men for whom the sec. 289.16 trust was legislatively created.

4. *Whether the doctrine of laches precludes plaintiff's recovery.* The trial court held that: "Laches fails as a defense because plaintiff brought reasonably prompt action on the numerous contracts against the Bank as well as other individuals and entities. The Bank has not been prejudiced by any delay." To successfully assert the defense of laches it must be established that there exists: "(1) unreasonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and (3) prejudice to the party asserting the defense in the event the action is maintained."[21] In the case before us, particularly as to the absence of any unreasonable delay, we affirm the trial court's holding. The bank's reference appears to be to that period of time during which the bank was loaning money and the plaintiff was providing materials. The trial court found that it was not unreasonable for plaintiff not to make any claims against the surety or the bank or the municipalities involved at such time. Obviously the trial court gave weight to the long history that both companies had of doing business with each other, and the testimony of the president of plaintiff Schneider Fuel & Supply Company who testified of Underground: "They had been an excellent, excellent company over the years, good background, hard workers, excellent knowledge of the field. Apparently no problem, as far as we know, in obtaining bonds for those municipal contracts. Did excellent work." In the *Murphy Case,* it was argued by the bank that it was only bound to hold the funds involved ". . . for a year from the time the work was completed at which time

---

[21] *Greenfield v. West Milwaukee* (1956), 272 Wis. 215, 232, 233, 75 N. W. 2d 424.

Murphy's right to sue on the bond expired . . . ."[22] Our court rejected any such time limitation of one year, stating: ". . . he [Murphy] had the remedy, independent of the bond, of suing the bank, if he could trace the fund into the bank, and was limited in bringing that action only by the general statute of limitations."[23] In the case before us, there having been no unreasonable delay, we affirm the trial court's conclusion that the defense of laches is not here appropriate.

5. *Whether the plaintiff is equitably estopped from making a claim against the bank* because it did not make any claims while the bank was making loans to Underground. The argument here very nearly ploughs the same ground as does the contention that laches is here applicable.[24] Since it was separately raised, it will be separately discussed. The trial court held that estoppel was not pleaded (and it was not) and further held that estoppel as a defense fails because plaintiff ". . . had no duty to inform the Bank of the status of its accounts with Underground and because the Bank relied on no conduct by the plaintiff." For the court to apply equitable estoppel, three factors must be present: "(1) *Action or nonaction* which induces (2) *reliance* by another (3) to his *detriment*."[25] The bank sees this three-pronged test as met by the failure of plaintiff to come forward earlier with its claims against Underground, contending that its failure so to do caused the bank to

---

[22] *Murphy v. National Paving Co., supra,* footnote 12, at page 111.

[23] *Id.* at page 111.

[24] *See:* Annot. (1964), 93 A. L. R. 2d 515, footnote 15, stating: "The courts have typically used the terms, 'laches,' 'waiver,' or 'estoppel' together and sometimes interchangeably, with little effort at distinguishing between them. In the present context, the effect of all three may be subsumed under lack of diligence."

[25] *Gabriel v. Gabriel* (1973), 57 Wis. 2d 424, 429, 204 N. W. 2d 494.

extend loans to Underground. There is no evidence that plaintiff knew of the financial arrangements between the defendant bank and Underground so a duty to inform the bank could hardly here be met. More important, as we have made clear earlier, the duty to inquire or make inquiry was on the bank in its role as trustee under the sec. 289.16, Stats. 1967, trust. There was no coexisting duty on the part of the plaintiff to disclose the claims it had against Underground. To give rise to an estoppel by silence or inaction, our court has said that there ". . . must be a right and an opportunity to speak and an obligation or duty to do so."[26] There, in the *Mortgage Associates Case*, we held that: "In the ordinary case of a first mortgage and subcontracts, there exists no duty on the part of the mortgagee to disclose pending or threatening defaults to contractors."[27] In the case before us, we hold that there was no duty, required by sec. 289.16, or otherwise, on the part of the plaintiff to inform the defendant bank of defaults in payments by Underground, and particularly no duty where the plaintiff had no knowledge of the financial arrangements between Underground and defendant bank.

*By the Court.*—Judgments affirmed.

---

[26] *Mortgage Associates v. Monona Shores* (1970), 47 Wis. 2d 171, 185, 177 N. W. 2d 340.

[27] *Id.* at page 185.