In the Matter of Stanley PACOCHA, Jr. and Peggy Pacocha, f/d/b/a Ken-Mar Construction and Ken-Mar Standard, Debtors.

WOLOHAN LUMBER CO., INC., Fred's Paint Store, Inc., Wm. Adams Trucking & Excavating, Ltd., John Skibba, d/b/a Skibba Truss and Building Supply, Steven L. Thompson, Plaintiffs,

v.

Stanley PACOCHA and Peggy Pacocha, f/d/b/a Ken-Mar Construction, Defendants.

Bankruptcy No. 79–01368.
Adv. Nos. 80–0014, 80–0016, 80–0017, 80–0018 and 80–0025.

United States Bankruptcy Court, W. D. Wisconsin.

Nov. 4, 1980.

David E. Rohrer, Stevens Point, Wis., for Wolohan Lumber Co., Inc., Fred's Paint Store, Inc., Wm. Adams Trucking & Excavating, Ltd. and John Skibba, d/b/a Skibba Truss and Building Supply.

Charles F. Jensen, Stevens Point, Wis., for Steven L. Thompson.

John V. Finn, Stevens Point, Wis., for Stanley Pacocha and Peggy Pacocha, f/d/b/a Ken-Mar Const.

WILLIAM H. FRAWLEY, Bankruptcy Judge.

The plaintiffs in each of the above entitled actions having filed a complaint herein that the obligations to the plaintiffs in each of said respective cases be determined to be nondischargeable, and the defendants-debtors in each action having filed an answer denying the nondischargeability and praying that the complaints herein be dismissed and alleging specific defenses in each action; and said actions having been consolidated for hearing by the Court; and pretrials having been held; and the plaintiffs, Wolohan Lumber Co., Inc., Fred's Paint Store, Inc., Wm. Adams Trucking & Excavating, Ltd. and John Skibba, d/b/a Skibba

Truss and Building Supply, having appeared by David E. Rohrer, their attorney, and plaintiff, Steven L. Thompson, by his attorney, Charles F. Jensen; and the defendants having appeared by John Finn, their attorney; and a trial having been held and evidence taken; and the Court having heard the arguments of counsel at the conclusion of the trial, and having considered the written briefs filed herein and the respective position of the parties relative to the liability, FINDS:

1. That the defendants conducted a business formerly known as Ken-Mar Construction for the building of homes in and about Stevens Point and Amherst, Wisconsin, and that they duly filed a petition for relief herein on November 8, 1979.

2. That the plaintiffs are all subcontractors and materialmen who furnished materials and labor on home constructions under the general construction contracts of the debtors.

3. That the plaintiffs in each of the cases contend that their debt is nondischargeable in view of Wis.Stats. § 289.02(5) and § 706.11(3).

4. That defendants contend that said debts are dischargeable under the Bankruptcy Act and that the Wisconsin Statutes do not pre-empt the bankruptcy law and its definitions contained therein.

5. That from late 1977 until the time of the filing of the bankruptcy petition herein, Ken-Mar Construction built thirteen homes, twelve of which were financed through First Financial Savings & Loan of Stevens Point.

6. That the first seven homes built by Ken-Mar were known as Spec Homes wherein the debtors owned the land and built the homes and sold them, and one house was their own personal residence.

7. That the remaining five were homes built during 1979 wherein Ken-Mar was the prime contractor in which the land was owned by the purchaser-mortgagor who hired Ken-Mar to do the construction work.

8. That the evidence shows that on all of the jobs involved in the complaints in the above actions the materials and labor were furnished on a debtor-creditor relationship between the plaintiffs and the defendants-debtors, and prior to any payment of loan funds or financing proceeds to the defendants by First Financial Savings and Loan or any other mortgage holders.

9. That none of the plaintiffs made any attempt to protect themselves under the Wisconsin Lien Law by filing a lien on the various properties.

10. That the evidence consisting of the testimony, the voluminous exhibits, the company books, cancelled checks, balance sheets and related bookkeeping items all reveal that the materials and labor extended were supplied prior to the payment by First Financial Savings and Loan.

11. That one Terry Wolfe and the Terry Wolfe Realty sold all but one of the Spec Homes for the defendants, and that he made arrangements to introduce the defendants to the landowners relative to the other houses.

12. That plaintiffs' complaints contend that defendants were acting in a fiduciary capacity, and that such funds as were paid to them were trust funds under the laws of the State of Wisconsin; that defendants' conduct was tantamount to theft by contractor and embezzlement.

13. That defendants furnished evidence by one Betty Huettel, a certified public accountant of Stevens Point, Wisconsin, as to an examination of all of the business dealings of the Ken-Mar Construction business, including bank accounts in the Security State Bank of Amherst, as well as the operating accounts and books.

14. That to recite page after page of evidence as to specific checks and as to the records of the Ken-Mar business bank account would serve no purpose in this decision, and it may be summarized by saying that the financing funds paid to Ken-Mar by First Financial Savings and Loan and Terry Wolfe Realty amount to $415,550.73, and that the total amount deposited in the Security State Bank of $420,517.84 is almost $5,000.00 more than had been received from the financing sources.

15. That from the evidence and the examination and cross-examination of the certified public accountant it can be concluded that defendants made bad business contracts by underbidding many of the jobs herein referred to, and that in addition the decline in the building trade took place at about the time that defendants were heavily engaged in their work and financing became unavailable.

16. That there is no showing of fraud or embezzlement on the part of the defendants sufficient to deny a discharge or the dischargeability of the debts involved.

17. That there is no question of moral turpitude involved and clearly from the evidence there was no attempt by the defendants, or either of them, to commit a fraud or embezzlement, or such conduct as could warrant a finding of bad faith, misconduct or intent to defraud.

18. That said evidence cannot be interpreted to show a defalcation within the meaning of the Bankruptcy Act.

19. That the evidence furnished by the plaintiffs and the defendants raises the question of whether a fiduciary relationship was created by Wis.Stat. § 289.02(5) as being the type contemplated by 11 U.S.C. § 523(a)(4) and whether the relationship between the parties constitutes a contractor or subcontractor relationship within the meaning of the Wisconsin Statutes, and whether the default under the Wisconsin Statutes created a defalcation within the meaning of 11 U.S.C. § 523(a)(4).

20. That the briefs of counsel have been most helpful to the Court in answering the questions, and the summarization of the evidence by counsel in each of the cases has materially shortened the work of the Court and been of great help in arriving at the determination of the facts. Suffice it to say, that under the Wisconsin Lien Law the fiduciary relationship does not arise until the money has been paid to the contractor. In each of these cases it is noted that it was a debtor-creditor relationship and that the material and labor had all been furnished prior to the payment of the loan funds.

21. That since the defendants were not holding any funds paid to them at the time the debts were incurred they did not become fiduciaries under the meaning of § 523(a)(4) of the Bankruptcy Code. The elements of an express trust are not present, because until the contractor has been paid there can be no trust res. Their relationship in these cases was a simple contractual relationship of debtor-creditor and open account transactions. The failure of the plaintiffs, as above stated, to take timely protection of their lien rights given by the Wisconsin Lien Statutes deprives them of an equitable trust since they ignored the statutory relief available to them. *Visser v. Koenders*, 6 Wis.2d 535, 95 N.W.2d 363 (1959); *Rabideau*, 1 B.C.D. 789 (W.D. Mich.1975).

22. There are numerous other authorities that could be cited, and the Court is fully aware of the opposite interpretation of § 289.02(5) by other Courts in this state, but the Court adopts the interpretation as found in the *Rabideau* case which interprets an almost identical law as the Wisconsin law, and clearly invokes the Congressional intent of granting to the debtors a "fresh start" which is the underlying basis of the Amended Act of 1978 unless the conduct of the debtors has been such that they should be denied such help.

23. That each of said debts to the plaintiffs is dischargeable under the Bankruptcy Reform Act above referred to.

### CONCLUSIONS OF LAW

That an order be entered finding each of the debts due to the plaintiffs in each of the above entitled actions dischargeable, and that the complaints be dismissed upon the merits and without costs.

### ORDER

NOW, THEREFORE, IT IS ORDERED AND ADJUDGED: That the debts owed to each of the plaintiffs above named be and the same are hereby discharged, and the complaint in each of said actions is hereby dismissed upon the merits and without costs to either party.