KRAEMER BROS., INC., Appellant,

v.

PULASKI STATE BANK, Plaintiff-Respondent-
Petitioner,

WESLOW & SONS, INC., Defendant.

Supreme Court

*No. 85–0260. Argued March 3, 1987.—Decided June 1, 1987.*

(Also reported in 406 N.W.2d 379.)

For the plaintiff-respondent-petitioner there was a brief by *Randolph Perkins, F. Scott Wochos, Egan & Laird,* the Green Bay office of *Godfrey & Kahn, S.C.,* Green Bay, and oral argument by *Joseph Nicks.*

For the appellant there was a brief by *James A. Jaeger* and *Melli, Walker, Pease & Ruhly, S.C.,* Madison, and oral argument by *James A. Jaeger.*

SHIRLEY S. ABRAHAMSON, J.  This is a review of a published court of appeals decision, *Kraemer Bros., Inc. v. Pulaski State Bank,* 130 Wis. 2d 194, 387 N.W.2d 94 (1986), reversing an order of the circuit court for Brown county, N. Patrick Crooks, Circuit Judge. The circuit court concluded that funds in the account of Weslow and Sons, Inc., at the Pulaski State Bank were not a trust fund for the benefit of Weslow's subcontractors and material suppliers under sec. 779.02(5), Stats. 1985–86. The court of appeals reversed the order of the circuit court. We affirm the decision of the court of appeals reversing the order of the circuit court, but we remand the matter to the circuit court for further proceedings.

The issues before us are: (1) Whether sec. 779.02(5), Stats. 1985–86, requires a "direct" payment from the owner to a subcontractor in order for the monies to constitute a trust fund for material suppliers and second-tier subcontractors; and (2) whether the monies lose their trust fund status because they are not "in the hands of the subcontractor" when they are deposited in the subcontractor's bank account.

Before discussing these two issues, we set forth the facts to which the parties stipulated. Jackson County Bank entered into a construction contract with Kraemer Brothers, Inc., under which Kraemer Bros. as the prime contractor was to make improvements on the bank's real estate. Kraemer Bros. entered into a subcontract agreement with Weslow and Sons, Inc., a corporation engaged in the mechanical, plumbing, heating and air conditioning contracting business, in which Weslow was to furnish labor and materials on the Jackson County Bank project. Weslow in turn entered into subcontract agreements with third parties to obtain labor and materials to

perform its contract with Kraemer Bros. on the Jackson County Bank project.

In January 1983, Weslow entered into a general line of credit agreement with Pulaski State Bank evidenced by notes secured by security interests in certain assets of Weslow.

On December 7, 1983, Weslow applied to Kraemer Bros. for a progress payment of $1,665 for labor and materials Weslow and its subcontractors or suppliers had furnished. Kraemer Bros. paid that amount to Weslow on December 23, 1983. On December 31, 1983, Weslow applied to Kraemer Bros. again, this time for a payment of $26,018. for labor and materials that Weslow and its subcontractors or suppliers had furnished. Kraemer Bros. paid that amount to Weslow, which deposited the check for that amount in its account at Pulaski State Bank. On January 27, 1984, a receiver for Weslow was appointed pursuant to ch. 128 of the Statutes.

Weslow owes $18,377.43 to several of its subcontractors and suppliers for whom Weslow received payment from Kraemer Bros. as a result of the December 7 and December 31 applications. Weslow has on deposit at Pulaski State Bank the sum of $18,377.43, which represents proceeds traceable to Kraemer Bros.'s check in the amount of $26,018. Kraemer Bros. contends that these monies are held in trust for the benefit of subcontractors and suppliers whom Weslow had identified in its application for payment. The claims of Weslow's subcontractors and suppliers for unpaid labor and materials are lienable claims against the project property for which Kraemer Bros. is liable by contract, if such amounts remain unpaid.

Kraemer Bros. requested payment of the $18,377.43 from Pulaski State Bank for disbursement to the unpaid subcontractors and material suppliers.[1] Pulaski State Bank refused payment, claiming that the monies were not a trust fund and that it had a right to set off Weslow's debt to the Bank against the account. Kraemer Bros. requested the circuit court to determine the trust fund status of the monies.

## I.

The resolution of this case turns on the meaning of sec. 779.02(5), Stats. 1985–86, which provides in pertinent part as follows:

> (5) THEFT BY CONTRACTORS. ... all monies paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid, and shall not be a trust in the hands of any other person.

Sec. 779.02(5) is part of the Wisconsin Construction Lien Law. Construction lien statutes originated nearly 150 years ago to encourage construction by protecting the contractors and subcontractors of building projects. Sec. 779.02(5) is designed to protect subcontractors and material suppliers by making money paid by the owner to the contractors and

---

[1]Kraemer stands in the shoes of Weslow's subcontractors for the purpose of this case.

subcontractors a trust fund for the subcontractors and material suppliers.

Pulaski State Bank contends that the monies in Weslow's bank account are not a trust fund under sec. 779.02(5) because Weslow received the monies from the prime contractor, Kraemer Bros., not from the owner, Jackson County Bank. Pulaski State Bank reads sec. 779.02(5) as requiring payment to be made directly by the owner to the subcontractor. Sec. 779.02(5) does not, however, include the word "directly" in describing payment between the owner and its subcontractors. Kraemer Bros. urges that all sec. 779.02(5) requires for a trust to be imposed is that the payment have originated with the owner.

Pulaski State Bank cites *Visser v. Koenders,* 6 Wis. 2d 535, 95 N.W.2d 363 (1959), as suggesting that a direct payment of monies by an owner to a contractor is necessary for the monies to have trust fund status. We disagree with this reading of the case. In *Visser* the contractor was adjudicated bankrupt, and the subcontractor sought a declaratory judgment that the trustee in bankruptcy had no interest or claim upon money owed by the owner to the contractor. The subcontractor argued that the unpaid monies were held in trust and that the subcontractor should prevail over the claims of the trustee. The court ruled in favor of the trustee, holding that monies retained by the owner were not a trust fund. *Visser* stands for the proposition that payment by the owner to the contractor is a prerequisite to the creation of a trust fund for the benefit of a subcontractor. Nothing in *Visser* compels the conclusion that a direct payment by an owner to a subcontractor is required to impose a trust on the monies in the hands of the subcontractor.

The *Visser* case determined that a prerequisite for the creation of a trust under sec. 779.02(5) is that payment be made by the owner to the contractor or subcontractor, and we must determine whether, as Pulaski State Bank claims, the owner must make payment "directly" to the subcontractor in order for the monies in the hands of the subcontractor to be a trust fund. Kraemer Bros. and the court of appeals cite *State v. Blaisdell,* 85 Wis. 2d 172, 270 N.W.2d 69 (1978), as support for the proposition that direct payment is not required. The court did not expressly address this question in *Blaisdell,* but implicit in and central to its holding was that payment need not be direct. *Blaisdell* involved a criminal prosecution of a subcontractor for violation of sec. 289.02(5), the predecessor to sec. 779.02(5). The owner in that case hired a general contractor to construct an addition to the owner's house. The general contractor entered into a subcontract with the defendants, who in turn hired a subcontractor (a second-tier subcontractor) who furnished the defendants with electrical supplies. The general contractor fulfilled its obligations to the owner and was paid in full. The general contractor then paid the defendants for their work in eight monthly installments. The defendants went into receivership and their subcontractors were not paid for the last job. The court held there was sufficient evidence to support the defendants' convictions; the evidence showed the defendants intentionally used monies paid to them by the owner, via the general contractor, for purposes other than paying their subcontractors for supplies furnished on the job. Implicit in this court's decision upholding the convictions was the recognition that monies received by the defendants from the general contractor (who had been

paid by the owner) were held in trust and could not be applied to any other obligations until the subcontractors were paid off. *Blaisdell,* 85 Wis. 2d at 177.

Another case that strongly implies that direct payment from an owner to a subcontractor is not necessary to create a trust fund is *W.H. Major & Sons, Inc. v. Krueger,* 124 Wis. 2d 284, 369 N.W.2d 400 (Ct. App. 1985). In that case, the court of appeals stated that in order for a second-tier subcontractor or material supplier to claim a trust fund under sec. 779.02(5) it must "establish or 'trace' payment by an owner to the contractor or subcontractor." *W.H. Major & Sons, supra* 124 Wis. 2d at 291. In that case the court ruled in favor of the second-tier subcontractor with respect to one claim in which payment could be traced from the owner to the subcontractor and rejected other claims in which there was no evidence that the owner paid the prime contractor before the prime contractor paid the subcontractors. The opinion implies that if monies can be traced from an owner to a prime contractor and then from the prime contractor to the subcontractor the monies are a trust fund in the hands of the subcontractor for the benefit of the second-tier subcontractors under sec. 779.02(5).

The limited case law on this subject suggests that as long as payments can be traced from the owner to the subcontractor the monies in the hands of the subcontractor are held in trust under the statute for the benefit of the second-tier subcontractors. This interpretation of the statute comports with the practices of the industry. Typically the prime contractor serves as a conduit for payments from an owner to a subcontractor. This interpretation also comports with the policy of the statute, which is to assist subcontractors and their subcontractors and suppliers in getting

paid and to protect owners and prime contractors from paying twice. As Professor Raushenbush commented, "Certainly the trust obligations of the subcontractor are sharply limited if the statute does not apply to payments received from the prime contractor .... It is hoped that reasonable interpretation of the statute, if the question arises, will produce the sensible result that the subcontractor has trust obligations as to funds received from the prime contractor. . . .[2] It is reasonable to require a subcontractor to protect his sub-subs and suppliers, just as a prime must protect all claimants under him. The statute recognizes this by the words 'or subcontractors' after 'prime contractor' at six places in its language. There is no sensible reason why such should be limited to the unusual subcontractor who happens to be paid directly by owner or lender."[3]

We conclude that reading sec. 779.02(5) to require payment directly from the owner to the subcontractor is not reasonable and is contrary to the purpose of the statute. We therefore hold that sec. 779.02(5) does not require that payment be made directly from the owner to the subcontractor for a trust to be created; sec. 779.02(5) requires that monies paid to the subcontractor be traceable to the owner.

The court of appeals assumed in its decision that the owner, Jackson County Bank, made payments to Kraemer Bros., who in turn paid Weslow. We do not

---

[2]W. B. Raushenbush, *Wisconsin Construction Lien Law—1974* (U. of Wisconsin—Extension, 1974), pp. 176–77.

[3]W. B. Raushenbush, *Wisconsin Construction Lien Law—1974* (1976 Supp.), pp. 33–34.

believe that the stipulation in the record is sufficient to enable the court of appeals or this court to trace the monies from Jackson County Bank to Kraemer Bros. to Weslow. Kraemer Bros. offered in the circuit court to introduce evidence tracing the payments it made to Weslow to payments it received from Jackson County Bank, the owner. The circuit court, however, erroneously denied Kraemer Bros.'s request to introduce this evidence. The circuit court concluded that payment must be directly from the owner to Weslow and that tracing the payment from the owner to Kraemer Bros. to Weslow was not sufficient under sec. 779.02(5). We conclude that the case should be remanded to the circuit court for proceedings to determine whether the payments by Kraemer Bros. to Weslow can be traced to the owner.

## II.

Pulaski State Bank further contends that even if the monies paid by Kraemer Bros. to Weslow constituted a trust fund, the trust fund status was lost when Weslow deposited the money into its account at the Pulaski State Bank. Sec. 779.02(5) provides that "... all monies paid to any contractor or subcontractor by any owner for improvements, constitute a trust fund *only in the hands of the prime contractor or subcontractor ... and shall not be a trust fund in the hands of any other person.*" (Emphasis added.) Pulaski State Bank argues that once Weslow deposited the money into its bank account, the trust fund was no longer in Weslow's hands but rather in the hands of the bank. Thus, the money was no longer a trust fund.

The statute does not define the phrase "only in the hands of the prime contractor or subcontractor

and not ... in the hands of any other person." The phrase "in the hands of" does not have a definition in the construction or banking industry. The language limiting a trust fund to monies *only* "in the hands of the prime contractor or subcontractor" and the language *"not in the hands of any other person"* were added to the statute in 1975 in response to *Schneider Fuel v. West Allis State Bank,* 70 Wis. 2d 1041, 236 N.W.2d 266 (1975). *Schneider Fuel* involved a dispute between a subcontractor and a bank. The bank made loans to a general contractor secured by an assignment of specific accounts receivable of the general contractor. The general contractor paid the bank with funds it received from its construction contracts and went out of business owing one of its subcontractors about $400,000. The subcontractor argued that the funds the bank received in payment of the loans remained a trust fund for the benefit of the subcontractors and suppliers of the general contractor. The circuit court found that the bank knew that the payments it received from the general contractor originated from construction contracts and held for the subcontractor. The supreme court affirmed the decision.

Fearing that the *Schneider Fuel* decision would jeopardize all accounts-receivable bank financing of contractors, the legislature added the word "only" before the phrase "in the hands of the prime contractor or subcontractor" and added the phrase "and shall not be a trust in the hands of any other person." The legislature was addressing the type of problem presented in *Schneider Fuel,* namely, the situation of a bank which accepts repayments of loans from contractors or subcontractors who then become insolvent and whose suppliers and subcontractors then seek to

impose a trust on the funds the bank received in repayment of loans.[4] In those cases in which the general contractor or subcontractor writes a check to the bank as repayment of the bank's loan, said the legislature, the funds would not be a trust "in the hands" of the bank.

The key difference between *Schneider Fuel* and this case is that in *Schneider Fuel* the contractor actually paid the bank from its bank account which included money the contractor had received from the "owner." The bank thus acquired absolute ownership of monies previously held in trust for subcontractors.

---

[4]Laws of 1975, ch. 409. The 1975 act amended secs. 112.01(1)(b) and (10), 289.02(5), 289.16 and 706.11(3) which relate to trust funds of contractors and subcontractors and fiduciary duties in connection with trust funds. In analyzing the purpose of the amendment the Legislative Reference Bureau stated:

> "This bill adds language to the uniform fiduciaries act that a bank paying a check written on the personal account of a fiduciary, including where the check is payable to the bank, as in a loan repayment, is not bound to inquire whether the fiduciary is committing any breach of his or her fiduciary obligation.
>
> "The bill further declares that the proceeds of a mortgage on land paid to a contractor or subcontractor for improvements upon the mortgaged premises, all moneys paid to a contractor or subcontractor by an owner for improvements, and all moneys, bonds or warrants paid to a contractor or subcontractor for public improvements, constitute a trust fund only in the hands of the contractor or subcontractor for all claims due or owing for labor and materials, and are not a trust fund in the hands of any other person."

In the legislative history of the amendment, there is a handwritten document that expressly states that the amendment is in response to a Wisconsin Supreme Court decision *(Schneider Fuel)* which held that payment of a loan by a contractor to a bank constituted a trust fund where the contractor did not pay his subs.

In the present case, however, Weslow did not make payment to the bank; Weslow deposited money into its own account at the bank. The bank did not become owner of funds Weslow deposited; the bank became a debtor of Weslow. Depositing funds into a bank account is different from using funds from a bank account to make payments to a bank on a loan. We agree with Kraemer Bros. that the 1975 amendment to sec. 779.02(5) was designed to deal specifically with the type of fact situation encountered in *Schneider Fuel* and that the facts in *Schneider Fuel* are distinguishable from the facts in this case.

It is highly unlikely that the legislature intended that monies lose their character as a trust fund merely by being deposited into a bank account. It is more reasonable to interpret the 1975 amendment in light of the situation it was designed to remedy: monies formerly held in trust fund status lose their trust fund status if they are paid out to satisfy obligations to parties other than trust fund creditors. This interpretation would prevent trust fund claimants from pursuing parties who in good faith accepted payments from the subcontractor while at the same time protecting the trust fund creditors when the subcontractor engages in the ordinary business practice of using a bank account as a repository for monies which it receives.

We hold that the monies Weslow deposited with Pulaski State Bank did not lose their trust fund status by virtue of the deposit. Pulaski State Bank does not argue that its right of setoff is superior to the claims of the trust funds beneficiaries.

For the reasons set forth we affirm the decision of the court of appeals reversing the order of the circuit

court and we modify the decision of the court of appeals by remanding the matter to the circuit court to determine whether the payments to Weslow from Kraemer Bros. can be traced to payments by Jackson County Bank to Kraemer Bros.

*By the Court.*—The decision of the court of appeals is modified and as modified affirmed; the cause is remanded to the circuit court with directions.