WISCONSIN DAIRIES COOPERATIVE, Plaintiff,

v.

CITIZENS BANK & TRUST, a Wisconsin banking corporation, Michael E. Boncher, President, Defendant-Appellant,

MARATHON MASONRY, INC., Ronald Wadzinski, Commercial Roofing, Inc., Wayne Herzog, Wausau Tile, Inc., Edward Creske, County Concrete, Corp., Merlin Sonnentag, Hanz Contractors, Inc., Lawrence Hanz, Jr., Wausau Buildings, Robert Schedler and Holster Construction, Inc., Robert Holster, Defendants-Respondents.

Supreme Court

*No. 89-1771. Submitted on briefs January 25, 1991.—Decided April 3, 1991.*

(Also reported in 467 N.W.2d 124.)

759

For the defendant-appellant there were briefs (in the court of appeals) by *Thomas F. Mallery* and *Mallery & Zimmerman,* Wausau.

For the defendants-respondents, Marathon Masonry, Inc. and Wausau Tile, Inc. there was a brief (in the court of appeals) by *Kevin P. Crooks* and *Crooks, Low & Connell, S.C.,* Wausau.

Amicus curiae brief was filed by *John E. Knight, James E. Bartzen* and *Boardman, Suhr, Curry & Field,* Madison for Wisconsin Bankers Association.

WILLIAM A. BABLITCH, J.   This case is before the court on certification from the court of appeals. Citizens Bank & Trust (Bank) appeals the circuit court's grant of summary judgment in favor of the respondents, the subcontractors. The subcontractors and the Bank, as creditors of the insolvent prime contractor Holster Construction, Inc. (Holster), each claim money that Wisconsin Dairies Cooperative (Wisconsin Dairies) owed to Holster and deposited with the Marathon County Clerk of Court. The circuit court found that the funds constitute a trust fund under the trust fund statute, sec. 779.02(5), Stats., to which the subcontractors are entitled. The Bank argues that there is no trust for the benefit of the subcontractors because the owner, Wisconsin Dairies, did not make direct payment to the prime contractor, Holster, and because the subcontractors failed to preserve their lien rights. We hold that the trust fund statute does not require direct payment from an owner to a contractor. We also hold that the failure of

subcontractors to preserve their lien rights does not affect their eligibility as trust beneficiaries. Accordingly, we agree with the circuit court that the subcontractors are entitled to the money held by the clerk of court.

The facts are not in dispute. In July, 1988, Wisconsin Dairies contracted with Holster to supervise the construction of a 500 square foot addition to their building in Rothschild, Wisconsin. As prime contractor, Holster hired the subcontractors for the project, the defendants-respondents in this case: Marathon Masonry, Inc.; Commercial Roofing, Inc.; Wausau Tile, Inc.; County Concrete, Corp.; Hanz Contractors, Inc., and Wausau Buildings. The project was completed in January, 1989.

Wisconsin Dairies still owed Holster $16,516.06 under the construction contract when the project was completed. By this time, however, Holster was insolvent and in receivership. To ensure that the money they owed would be distributed to the proper parties, Wisconsin Dairies deposited the $16,516.06 with the Marathon County Clerk of Court and sought a declaratory judgment on how the funds should be distributed.

Two separate entities claimed the money. The subcontractors claimed the money because they were still owed over $12,000 by Holster for their work on the Wisconsin Dairies Project. The Bank, a secured creditor of Holster, also made a claim because Holster owed them sums well in excess of the $16,516.06.

On July 10, 1989, the Bank moved for summary judgment asserting that the payment of $16,516.06 from Wisconsin Dairies to the Clerk of Court constituted an account receivable that was subject to the Bank's perfected security interest. All parties agreed that the issues raised by this case are questions of law amenable to summary judgment.

The subcontractors argued that the money constituted a trust under the trust fund statute, sec. 779.02(5), Stats., to which they were entitled. Section 779.02(5) states:

> Theft by contractors. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person . . .. Until all claims are paid in full, have matured by notice and filing or have expired, such proceeds and moneys shall not be subject to garnishment, execution, levy or attachment.

The Bank argued that the statute did not give the subcontractors priority to the money because they had failed to perfect their lien rights against the owner. The Bank also argued that there was no trust fund because the funds were not in Holster's "own hands." The circuit court found that the failure of the subcontractors to preserve their lien rights did not affect their rights to the funds under sec. 779.02(5). The circuit court found in favor of the subcontractors.

The Bank appealed the circuit court's decision and again argued that the subcontractors did not have a right to the funds under sec. 779.02(5), Stats., because they had failed to perfect their lien rights. Although the Bank barely addressed the issue, the court of appeals recognized in its certification that the threshold issue presented is whether a trust was even established under

762

the language of sec. 779.02(5) and this court's holding in *Visser v. Koenders,* 6 Wis. 2d 535, 95 N.W.2d 363 (1959).[1] After we granted certification in this case, the Wisconsin Bankers Association (WBA) filed an *amicus curiae* brief in favor of the Bank's position. The WBA argued that the money deposited with the clerk of court was not a trust fund under sec. 779.02(5) because it had not been paid directly to Holster.

This case presents two issues, both of which require construction of sec. 779.02(5), Stats. The construction of a statute is a question of law which this court reviews *ab initio. Sacotte v. Ideal-Werk Krug & Priester,* 121 Wis. 2d 401, 405, 359 N.W.2d 393 (1984). The first issue is whether an owner must directly pay a contractor in order for a trust fund to be created for the benefit of subcontractors under sec. 779.02(5). If there is a trust fund under sec. 779.02(5), then the second issue is whether subcontractors must perfect their lien rights in order to claim those trust funds.

We hold that sec. 779.02(5), Stats. does not require direct payment from the owner to the contractor or subcontractor and that a trust fund is created when an owner constructively pays an insolvent contractor by delivering money to the clerk of court to seek a declaratory judgment as to how the funds should be distributed. We also hold that the failure of subcontractors to pre-

---

[1] In fact, at one point the Bank specifically conceded that "[t]here is a trust fund." In spite of the Bank's concession, we find it necessary to address the issue of whether there was a trust in view of the *Visser* decision, which has been interpreted as implying that direct payment is a prerequisite for creation of a trust under sec. 779.02(5), Stats. This court is not bound by a party's concession on a question of law. *State v. Gomaz,* 141 Wis. 2d 302, 307, 414 N.W.2d 626 (1987).

serve their lien rights does not affect their eligibility as trust beneficiaries under sec. 779.02(5).

The first issue, whether direct payment is a prerequisite for the establishment of a trust under sec. 779.02(5), Stats., requires us to reconsider our decision in *Visser,* 6 Wis. 2d 535. In *Visser,* the prime contractor had been adjudicated bankrupt and a bankruptcy trustee appointed. *Id.* at 536. Visser and other subcontractors sought a declaratory judgment that the bankruptcy trustee had no interest or claim upon money still owed by the owner to the contractor. *Id.* at 535. The subcontractors argued that under the trust fund statute[2] money owed by the owner to the contractor was impressed with an equitable trust, even while it remained in the hands of the owner. *Id.* at 537. The court disagreed, finding that no trust was created under the statute because "[t]he principal condition is, first of all, that the money shall have been paid to the contractor by the owner." *Id.* at 537. The *Visser* court emphasized that equitable relief was particularly inappropriate because the subcontractors had not taken advantage of their lien rights against the owner which would have provided them with an alternative form of relief. *Id.* at 538.

---

[2]The statute at issue in *Visser* was the predecessor statute of sec. 779.02(5), Stats., sec. 289.02(4) 1957, which stated:

THEFT BY CONTRACTORS. The proceeds of any mortgage on land, paid to any principal contractor or any subcontractor for improvements upon the mortgaged premises and all moneys paid to him by any owner for improvements, constitute a trust fund in the hands of any such contractor or subcontractor to the amount of all claims due and to become due or owing from such contractor or subcontractor for labor and materials used for such improvements until all such claims have been paid; and the use of any of such moneys by any contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute, have been paid in full, or pro rata in cases of a deficiency, is theft of moneys so misappropriated.

Although the determinative factor in *Visser* was that there was no payment of any kind made by the owner, the decision has been consistently interpreted in bankruptcy proceedings as requiring a direct payment by the owner to the contractor in order for a trust to be created. *See In re Mercury Heating Co.,* 322 F. Supp. 1161, 1162 (E.D. Wis. 1971); *Matter of Don's Electric, Inc.,* 65 B.R. 399, 402 (Bankr. W.D. Wis. 1986); *Matter of Pacocha,* 9 B.R. 531, 533 (Bankr. W.D. Wis. 1980). Money in the hands of a bankruptcy trustee has not been considered to be money held by the contractor under the trust fund statute. *See Don's Elect., Inc.,* 65 B.R. at 402, n.6. The WBA urges us to follow this narrow construction of the trust fund statute.

*Visser* has been criticized as being contrary to the purposes of the trust fund statute. The legislative drafting notes to chapter 231, Laws of Wisconsin 1973, under the heading "Purpose of Proposal," state "[t]he purpose of this law is (a) to protect the owner from having to pay twice and (b) to secure payments to subcontractors and workers." *See also Kraemer Bros. v. Pulaski State Bank,* 138 Wis. 2d 395, 402–03, 406 N.W.2d 379 (1987) ("the policy of the statute . . . is to assist subcontractors . . . and suppliers in getting paid and to protect owners and prime contractors from paying twice.") *Visser,* however, as interpreted by the bankruptcy courts, limits the ability of subcontractors to get paid and encourages subcontractors to file liens against owners, thereby potentially subjecting owners to double payment. Professor Raushenbusch harshly criticized the *Visser* decision as poor public policy:

> If the subcontractors had given the required notices and had proceeded to file and enforce their liens, they would of course have been paid, but only because the owner would have had to pay twice. The subcontrac-

765

tors still would not have gained preferred position as against the other creditors of the insolvent prime contractor. The result is troublesome, because if the owner had paid the prime, then the subs would indeed have been preferred to the prime's other creditors. The effect of the decision seems to be to encourage subcontractors to perfect liens and force owners to pay twice, rather than rely on their preferred position as claimants against the assets of the prime contractor. As a policy matter, this outcome is troublesome enough to suggest the need for legislative action . . .. Raushenbush, *Wisconsin Construction Lien Law—1974* 179 (1975) (University of Wisconsin Extension).

The WBA nevertheless contends that the narrow construction of the statute adopted by this court in *Visser* is consistent with the legislature's intent. First, the WBA points out that the legislature has not acted to limit or modify the effect of the *Visser* decision in the over thirty years since it was decided. Second, the WBA argues that the legislature's response to this court's decision in *Schneider Fuel & Supply Co. v. West Allis State Bank,* 70 Wis. 2d 1041, 236 N.W.2d 266 (1975) indicates that it intended that the trust fund doctrine apply only to funds directly paid to the contractor, and only to funds in the contractor's own hands.

In *Schneider Fuel* we held that a bank whose loan had been repaid by a contractor from funds subject to the trust fund statute[3] was liable as a trustee to the

---

[3]The trust fund statute at issue in *Schneider Fuel* was sec. 289.16, Stats., which has since been renumbered as sec. 779.16. This statute covers public improvements, but has generally been amended and applied in a manner consistent with sec. 779.02(5). *See, e.g., Kraemer Bros.,* 138 Wis. 2d at 406, n.4, *In re Bossell, Van Vechten & Chapman,* 30 Wis. 2d 215, 219–220, 140 N.W.2d 255 (1966); *but see W.H. Major & Sons, Inc. v. Krueger,* 124 Wis.

unpaid subcontractors. The legislature quickly responded to *Schneider Fuel* by amending the trust fund statutes to prevent trust fund claimants from pursuing parties who in good faith accepted payments from the contractor or subcontractor. *See Kraemer Bros.*, 138 Wis. 2d at 405–07. The legislature added the word "only" before the phrase "in the hands of the prime contractor or subcontractor" and added the phrase "and shall not be a trust in the hands of any other person." Chapter 409, Laws of 1975. The WBA contends that these changes reflect the legislature's intent that the trust fund statute only apply when the funds are in the contractor's own hands.

■

We disagree with the WBA's construction of sec. 779.02(5), Stats. To require direct payment from the owner to the contractor for a trust to be established undermines the protection the legislature intended to provide to subcontractors and owners through the statute. As Professor Raushenbush recognized, this narrow construction is contrary to the purpose of the statute because it either leaves the subcontractor unprotected or provides the subcontractor with a remedy at the expense of the owner. Requiring direct payment would also allow owners, contractors, and secured creditors to circumvent the statute's protection for subcontractors by devising means to avoid paying contractors directly. To protect both subcontractors and owners, as the statute was intended, requires a more liberal construction of sec. 779.02(5).

---

2d 284, 290–93, 369 N.W.2d 400 (Ct. App. 1985) (recognizing that in some instances the variation in the language of the two statutes requires that the statutes be construed differently from one another).

Furthermore, we find no persuasive policy for treating payments to the clerk of court or to a bankruptcy trustee differently from direct payments to the contractor when in each case the payment is made to discharge a debt to the contractor. The statutory trust's purpose is to assist subcontractors in getting paid when an owner fulfills its obligation to pay for services the subcontractor has performed. Regardless of who receives the payment, it is the subcontractor's services that created the contested assets and the subcontractor should receive the funds. We noted in *In re Bossell, Van Vechten & Chapman,* 30 Wis. 2d 215, 219, 140 N.W.2d 255 (1966), that the policy behind a similar trust fund statute[4] was "protection of the person who furnished services or material to enable the contractor to carry out his public contract and such creditors were to be preferred to his creditors whose claims bore no relationship to the public improvement." This policy also applies to sec. 779.02(5), Stats.

■

We also disagree with the WBA's assertion that the legislature's 1975 amendment to sec. 779.02(5), Stats., in response to *Schneider Fuel,* indicates an intent to require direct payment to the contractor. As we stated in *Kraemer Bros.,* 138 Wis. 2d at 407, "[i]t is more reasonable to interpret the 1975 amendment in light of the situation it was designed to remedy: monies formerly held in trust fund status lose their trust fund status if they are paid out to satisfy obligations to parties other than trust fund creditors." Because the funds held by the clerk of court have not been paid out to satisfy other obligations, they retain their trust fund status.

---

[4]Section 289.536, Stats. 1963, the predecessor statute to sec. 289.16, which has since been renumbered as sec. 779.16.

768

Section 779.02(5), Stats., requires payment, but not direct payment, from the owner to the contractor. To the extent that *Visser* is interpreted to require direct payment from the owner to the contractor, it is overruled. *Visser* remains the law with regard to its central holding that no equitable trust is created for unpaid subcontractors while the money remains in the owner's hands. Wisconsin Dairies "paid" Holster, in the sense that it discharged an obligation to Holster, when it delivered the money to the clerk of court. *See Black's Law Dictionary* 1129 (6th ed. 1990) (defining "payment" as "[t]he fulfilment of a promise, or the performance of an agreement. A discharge of an obligation or debt . . ..") Accordingly, the funds are held in trust for the benefit of the subcontractors.

The second issue presented is whether a subcontractor must perfect its lien rights in order to claim trust funds held under sec. 779.02(5), Stats. The Bank argues, based on the following language of the statute, that subcontractors must perfect their lien rights in order to have priority to the funds over secured creditors:

> Until all claims are paid in full, have matured by notice and filing or have expired, such proceeds and moneys shall not be subject to garnishment, execution, levy or attachment. Section 779.02(5).

The Bank asserts that this language was intended to restrict a claimant's protection to a limited time period, beginning when the claimant contributes supplies or labor and ending at the earliest of three occurrences: (1) when the claimant achieves status as a perfected construction lienor, by filing under the notice requirements of sec. 779.02(2), Stats.; (2) when the time period for filing such notices expires; or (3) when all claims are paid

in full. Because the time period for filing a lien notice has expired, the Bank claims that the trust fund has terminated and the funds are subject to garnishment, execution, levy or attachment.

We find that neither the language of sec. 779.02(5), Stats., the legislative history, the policies behind the statute, nor our prior decisions support a conclusion that the legislature intended to terminate the trust fund if the subcontractor failed to preserve its lien rights. To the contrary, these factors demonstrate that the legislature intended to provide two independent and alternative remedies for protecting subcontractors—the construction lien provisions, *see, e.g.,* sec. 779.01(3), and the trust fund statute.

A careful reading of sec. 779.02(5), Stats., discloses no relationship between lien claims, which arise under other sections of ch. 779, and the trust fund protection accorded to subcontractors. Section 779.02(5) makes no reference to lien rights or to any statute concerning the perfection of lien rights. Furthermore, the statutory trust created by the section is a remedy against contractors, whereas the statutory lien provisions provide subcontractors with a remedy against owners. The language of the statute does not indicate an intent to make the remedies mutually exclusive or to make the enforcement of one remedy a condition precedent to pursuing the other. To the contrary, if statutory trust rights may only be asserted when lien rights have been preserved, then the protection provided by sec. 779.02(5) to subcontractors is superfluous. Under these circumstances, no rule of statutory construction supports imputing the notice and filing requirements of the lien claim provisions to sec. 779.02(5). If the legislature had intended to require

claimants to perfect their lien rights, it could have expressly stated this requirement in sec. 779.02(5).

This construction of the statute is also supported by the legislative history of the statute. The trust fund statute formerly required subcontractors to perfect their lien rights in order to make a claim to the trust. As we explained in *Weather-Tite Co. v. Lepper,* 25 Wis. 2d 70, 72–73, 130 N.W.2d 198 (1964):

> The statutory trust fund of moneys paid by an owner to the contractor was originally established for the payment of 'claims due for labor and materials to persons entitled to a lien by law against said owner or his property, . . .' [ch. 213, sec. 3, Laws of 1913.] This language was interpreted in *Pauly v. Keebler* [175 Wis. 428, 185 N.W. 554 (1921)] as excluding all persons who had been entitled to a lien but had lost that right by failing to take the necessary steps to perfect a lien. The statute was amended in 1935 so as to cover claims due or to become due 'for lienable labor and materials.' [ch. 483, sec. 87, Laws of 1935.] In 1955 the legislature amended the statute by dropping the word 'lienable' and provided for a trust in the amount of all claims due or to become due 'for labor and materials used for such improvements . . .' [ch. 78, Laws of 1955].

The court also cited the comments of the drafter of the 1955 amendment regarding the amendment's purpose:

> 'Purpose to compel preservation of trust fund and liability for embezzlement whether subcontractors file liens or not and to full extent of their claims whether time for filing liens therefore have expired or not. This was apparent original intent of legislature which has been so undermined by judicial construc-

tion as to leave the section of little practical effect.'
*Id.* at 73.

The legislative history provided in *Weather-Tite*
strongly supports the subcontractors' view that preserva-
tion of lien rights is not a required element for making a
claim under sec. 779.02(5), Stats.

The policy behind sec. 779.02(5), Stats., of protect-
ing both owners and subcontractors, also persuades us
that the legislature did not intend to require subcontrac-
tors to file lien claims in order to preserve their statutory
trust rights. As we noted above, when subcontractors
rely on their lien rights rather than their statutory trust
rights, the owner may be compelled to pay twice. There-
fore, we agree with Professor Raushenbush's view that it
is contrary to the policy of the trust fund statute to
require subcontractors to file lien claims.

Prior Wisconsin decisions also indicate that the
preservation of lien rights has not been viewed as a pre-
requisite for making a claim under the trust fund statute.
In *Weather-Tite,* 25 Wis. 2d at 72–73, we concluded that
the subcontractors were entitled to funds under the trust
fund statute even though they could not have obtained,
let alone preserved, liens on the work they had per-
formed. In *Paulsen Lumber, Inc. v. Anderson,* 91 Wis.
2d 692, 695, 283 N.W.2d 580 (1979), we set forth the four
essential elements of a civil claim under the trust fund
statute, but did not include the preservation of lien
rights among those elements. In *Loehrke v. Wanta
Builders, Inc.,* 151 Wis. 2d 695, 705, 445 N.W.2d 717 (Ct.
App. 1989), the subcontractor successfully claimed funds
under the trust fund statute even though there was "no
suggestion" that the claimant had preserved his lien
rights.

We also disagree with a final contention of the Bank, that this case is controlled by a general principle that creditors with perfected security interests have precedence to funds over unsecured creditors. We find that the legislature intended claimants to statutory trust funds to have priority to funds paid by the owner to the contractor "[u]ntil all claims are paid in full, have matured by notice and filing or have expired . . .." Section 779.02(5), Stats. Since none of these events have occurred, the subcontractors are the trust beneficiaries. *Cf. Selby v. Ford Motor Co.*, 590 F.2d 642, 645–47 (6th Cir. 1979) (holding that funds held in statutory trust created by Michigan builders trust fund statute are protected from claims of bankruptcy trustee regardless of whether the subcontractors have perfected their lien rights).

We conclude that sec. 779.02(5), Stats., does not require direct payment from the owner to the prime contractor or subcontractor for a trust to be established. We also conclude that sec. 779.02(5) does not require subcontractors to perfect their lien rights in order to claim funds as trust beneficiaries. To require direct payment or the preservation of lien rights as a condition of sec. 779.02(5) would be contrary to the purpose of the statute of protecting subcontractors and owners. Therefore, the funds that Wisconsin Dairies deposited with the Marathon County Clerk of Court constitute a trust fund for the benefit of the subcontractors under sec. 779.02(5).

*By the Court.*—The decision of the circuit court is affirmed.